FRANCIS v. CRAMP & CO.

(Circuit Court of Appeals, Second Circuit. November 11, 1912.)

No. 52.

1. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—DEFECTIVE APPLIANCES.

That a pail, by which plaintiff was struck and injured, fell while being lowered from a roof, half full of cement, due to the pulling out of the lugs that held the bail, showed that the pail was improperly constructed, or improperly inspected.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972, 977; Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§ 287*)—INJURIES TO SERVANT—FELLOW SERVANT—NEGLIGENCE.

Plaintiff, while at work on a building in process of construction, was injured by the fall of a pail half full of cement, as it was being lowered from the roof by a fellow workman, due to a defective fastening of the bail. The pail was provided by defendant, and was selected by plaintiff's fellow servant, who was lowering it, from several about a water tank on the roof. There were larger and stronger pails in the building, but it was not shown that they were on the roof, or accessible, unless the servant who selected the pail in question made an extraordinary effort to find them. Held, that such servant was not negligent in selecting the defective pail as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1051–1067; Dec. Dig. § 287.*]

3. MASTER AND SERVANT (§ 235*)—INJURIES TO SERVANT—FELLOW SERVANT—INSPECTION.

Where several "army" pails had been placed about a water tank on the roof of a building in process of construction, to be used in the work, a servant was entitled to assume that any one of the pails so furnished was sufficiently strong to do the ordinary work for which it was intended, and he was under no obligation to make a personal inspection of each pail and reject those which, in his judgment, were unfitted for use.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 710–722; Dec. Dig. § 235.*]

4. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—DEFECTIVE APPLIANCES—NEGLIGENCE—QUESTION FOR JURY.

Where plaintiff, a bricklayer, engaged in the construction of a building for defendant, was injured by the fall of a pail half filled with cement, being lowered from the roof, by reason of the pulling out of the lugs holding the bail, whether the servant lowering the pail was at fault in selecting the particular pail used, whether such pail was properly constructed, whether defendant was negligent in providing such a pail for use, and whether sufficient diligence was shown by defendant in ascertaining its condition and keeping it in repair, were for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

5. MASTER AND SERVANT (§ 103*)—INJURIES TO SERVANT—APPLIANCES—DUTY OF MASTER.

A master is bound to exercise reasonable care to furnish for his servant's use suitable, fit, and sufficient appliances, and maintain them in a proper state of repair; and, while he may delegate the performance of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the duty, his responsibility still exists, and he is liable for the fault of the person who acts by his authority in performing the same.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 175; Dec. Dig. § 103.*

Concurrent negligence of master and fellow servant, see note to Maupin v. Texas & P. Ry. Co., 40 C. C. A. 236.]

Lacombe, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of New York; Van Vechten Veeder, Judge.

Action by John E. Francis against Cramp & Co. to recover for injuries to plaintiff while in defendant's service, by defendant's alleged negligence. From an order dismissing the complaint, plaintiff brings error. Reversed.

M. P. O'Connor, of New York City (George F. Hickey, of New York City, of counsel, and M. P. O'Connor, of New York City, on the brief), for plaintiff in error.

Eidlitz & Hulse, of New York City (Frederick Hulse and Martin A. Schenck, both of New York City, of counsel), for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. On November 7, 1910, the plaintiff was employed by the defendant as a bricklayer upon a building at 149th street and Amsterdam avenue, in the city of New York. While working upon a scaffold furnished by the defendant he was struck and seriously injured by a pail, half full of cement, falling upon him. The pail was lowered from the roof by a fellow workman, and while descending the nails which held the lugs to the pail pulled out and the loaded pail struck the plaintiff on the back while he was stooping over at his work.

The pail was made of wood and is known as an "army pail." It had a round iron bail with no wooden hand piece in the center. This bail was about the diameter of a lead pencil and was held in place by means of lugs nailed to the outside of the pail. Each lug had four holes through which nails were driven into the wood. No rivets were used. One of the lugs came off soon after the pail was lowered from the roof and when the pail tipped over the weight pulled off the other lug. Both lugs remained on the bail at the end of the rope. This pail was provided by the defendant, it was selected by Smith, the man who subsequently lowered it, from four or five other pails which were found around the water barrel on the roof. The pails furnished by the defendant were substantially of the same type—wooden pails with iron handles attached by lugs nailed to the outside. That the appliances were all furnished by the defendant and that the method of doing the work was directed by the defendant's superintendent, is not disputed.

The statement of the trial judge that the plaintiff was free from negligence is undoubtedly correct and was not disputed upon the ar-

gument. The only question to be considered is whether sufficient testimony was presented to warrant a finding by the jury that the defendant was guilty of negligence in providing for the use of its servants insufficient machinery, means and appliances to carry on the work safely.

[1] That the defendant provided the pail which caused the injury is not denied. That the pail was improperly constructed or improperly inspected and was incapable of bearing the strain to which it was subjected is demonstrated by the fact that the handle gave way when it was only half filled with cement.

[2] It is argued that Smith, who was a fellow servant, was guilty of negligence in selecting this particular pail.. This proposition might properly have been argued to the jury, but cannot be maintained as matter of law. The pail was one of several about the water tank on the roof, provided by the defendant for carrying on the work. There were a few larger and stronger pails in the building, but it is not shown that they were on the roof or accessible to Smith, unless he made an extraordinary effort to find them. He was not called upon to institute such a search.

[3] Smith was justified in assuming that any one of the pails furnished by the defendant was sufficiently strong to do the ordinary work for which they were intended. He was under no obligation to make a personal inspection of each pail and to reject those which in his judgment were unfitted for the work. This is not the duty of an ordinary workman and had he attempted to dictate the kind of appliances which the defendant should provide, he would, in all probability, not have remained long in its employ. It was enough that the pail in question was provided for his use and that there was nothing to indicate to him that it was improperly constructed or out of repair.

[4] Whether Smith was in fault and the plaintiff's injuries were due solely to the negligence of Smith, whether the pail was properly constructed for the work in hand, whether the defendant used proper care in providing such an appliance for the use of its servants, whether sufficient diligence was shown by the defendant in ascertaining its condition and keeping it in repair; were all questions of fact, which, in our judgment, should have been submitted to the jury. It can hardly be contended that a verdict for the plaintiff upon these propositions could be set aside as against the weight of evidence.

[5] The obligation which the law places upon the master in such cases is settled beyond dispute. It is his duty to take reasonable care and make reasonable effort to furnish for the use of his servants proper, suitable, fit and sufficient machinery, means and appliances, to maintain them properly and keep them in repair. He cannot avoid responsibility by shifting the duty upon others. He may delegate the duty, but the responsibility is still the master's and he is responsible for the fault of the person who acts by his authority and in his place and stead. If then, an injury occurs to a servant by reason of a defect in the ways, works, machinery or plant used in the business of the master, of which defect he knew or might have known by the ex-

ercise of ordinary care and diligence, the servant, if he be free from fault, as in the present case, may recover the full amount of his damages.

These propositions are so well settled that it is unnecessary to cite numerous authorities to sustain them. The rule is well stated in Hough v. Railway, 100 U. S. 213, at page 217 (25 L. Ed. 612), Mr. Justice Harlan says:

"But it is equally implied in the same contract that the master shall supply the physical means and agencies for the conduct of his business. It is also implied, and public policy requires, that in selecting such means he shall not be wanting in proper care. His negligence in that regard is not a hazard usually or necessarily attendant upon the business. Nor is it one which the servant, in legal contemplation, is presumed to risk, for the obvious reason that the servant who is to use the instrumentalities provided by the master has, ordinarily, no connection with their purchase in the first instance, or with their preservation or maintenance in suitable condition after they have been supplied by the master."

See also: B. & O. Railroad v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; T. & P. Railway v. Archibald, 170 U. S. 665, 668, 669, 18 Sup. Ct. 777, 42 L. Ed. 1188; Northern Pacific Railway v. Herbert, 116 U. S. 642, 647, 6 Sup. Ct. 590, 29 L. Ed. 755.

We think that the question of the defendant's negligence should have been presented to the jury. It was for them to say whether the pail in question was a safe and suitable instrumentality for the work in hand. If it were defective and unsuitable did the defendant know or should it have known of the defects?

The judgment is reversed.

LACOMBE, Circuit Judge (dissenting). I am unable to concur with the majority of the court in the disposition of this case. There is nothing to indicate that pails of this type were insufficient for the use to which this one was put. The wire handle did not break, nor did it pull out of the lug. The four nails which fastened each lug to pail were clinched over on the inside of the pail. There is nothing to show that such a method of fastening was not as secure as rivets would be. After the accident, as the witness says:

"The lugs were attached to the handle; the nails were not attached to the lugs; I didn't see any nails."

Apparently what gave way were the nails; either the heads came off, or the lugs slipped over them. Whether this happened because of some defect in the pail which reasonable inspection would have disclosed or from some other cause there is nothing to show. It may be that the nail heads on this pail were originally too small, or that some part of the nails below the head where they were imbedded in the wood had been acted upon by rust during long use and so gave way, or that some hard usage on the very day in question had knocked off the heads on one side. The weakness might have been apparent upon inspection, or it might not. It would be guesswork on the part of a jury to find that this particular pail when put to use to lower the mortar was in such a visible condition that an ordinarily prudent man would

have hesitated to use it. So, too, it would be mere guesswork to say that pails of this type, with nails driven through lugs and pail and clenched on the inside are not of a fit sort to lower 30 or 40 pounds weight.

The master is not an insurer; there must be something proved to show some sort of negligence on his part. In my opinion the case at bar is on all fours with two prior decisions of this court, The France, 59 Fed. 479, 8 C. C. A. 185, and Reilly v. Campbell, 59 Fed. 990, 8 C. C. A. 438, which lay down the law as I understand it to be. The decisions cited in the majority opinion from the Supreme Court are not in conflict with our opinion in these two cases. In Hough v. Railway there was a defect in the cowcatcher known to exist before the accident. Plaintiff had called attention to it and had been assured it would be repaired. In Baltimore & Ohio R. R. v. Baugh there was no defect of tools or machinery. A "helper engine" ran without following a scheduled train properly flagged. In T. & P. R. R. v. Archibald there was a visible defect in the coupling observed before the accident and which proper inspection would have disclosed. In Northern Pacific R. R. v. Herbert the brake was so badly broken and out of order that it could not be made to work, a defect perfectly visible upon inspection.

For those reasons I dissent.